**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| BATH & BODY WORKS BRAND MANAGEMENT, INC. AND BEAUTY AVENUES, LLC<br><br>Plaintiffs,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA<br><br>Defendants. | Court No. 1:25-cv-00945 |

**COMPLAINT**

Plaintiffs, Bath & Body Works Brand Management, Inc. and Beauty Avenues, LLC ("Plaintiffs"), by and through their counsel, bring this Complaint against Defendants the United States, U.S. Customs and Border Protection ("CBP"), and Rodney S. Scott, in his official capacity as Commissioner of CBP (collectively "Defendants"), and alleges as follows:

1.  Bath & Body Works Brand Management, Inc. and Beauty Avenues, LLC ("Plaintiffs") are U.S.-based importers of merchandise subject to tariffs imposed pursuant to a series of executive orders issued under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 et seq.

2.  Beginning in February 2025, the President issued multiple executive orders invoking IEEPA as authority to impose sweeping tariffs on goods imported from nearly all foreign countries, including from which Plaintiffs import merchandise (collectively, the "IEEPA Tariffs"). Plaintiffs are required to pay these tariffs at the time of importation.

3.  This Court and the U.S. Court of Appeals for the Federal Circuit have held that

IEEPA does not authorize the imposition of tariffs. *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025), *aff'd* 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025); *see also Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025).

4. In this action, Plaintiffs seek relief consistent with those decisions: a declaration that IEEPA Tariffs imposed on Plaintiffs are unlawful, and refunds of duties unlawfully collected.

5. On November 5, 2025, the Supreme Court heard oral argument in *V.O.S. Selections* and a related case arising out of the U.S. District Court for the District of Columbia, *Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). A decision is anticipated.

6. Filing this action is necessary because it is uncertain whether Defendants will issue refunds on liquidated entries even if the Supreme Court affirms the holding of the Federal Circuit in *V.O.S. Selections*. Plaintiff seeks relief from the impending liquidations to ensure that its right to a complete refund is not jeopardized.

7. Plaintiffs seek declaratory relief, suspension of liquidation, and a full refund of all IEEPA duties collected from Plaintiffs (that Plaintiffs have already paid and will continue to pay) pursuant to the challenged executive orders.

**PARTIES**

8. Plaintiff, Bath & Body Works Brand Management, Inc., is a U.S. corporation incorporated under the laws of Delaware and Plaintiff, Beauty Avenues, LLC, is a U.S. limited liability company organized under the laws of Delaware.

9. Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

10. Defendant United States Customs and Border Protection ("CBP") is the United States agency of the U.S. Department of Homeland Security that is responsible for collecting tariffs or duties, taxes, and fees on goods imported into the United States.

11. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

12. Defendants are referred to collectively in this Complaint as "Defendants."

## JURISDICTION AND STANDING

13. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See V.O.S. Selections, Inc.*, 149 F.4th at 1334. The Court has the same powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

14. Plaintiffs have standing to sue because it is "adversely affected or aggrieved by agency action within the meaning of" the APA. 5 U.S.C. § 702; *see* 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5."). Specifically, Plaintiffs are and continue to be the importers of record for goods imported into the United States from countries subject to the unlawful IEEPA duties as implemented and collected by CBP. As a result of the executive orders challenged by this lawsuit, Plaintiffs have paid IEEPA duties to the United States and thus has suffered injury caused by those executive orders.

15. Declaratory relief from this Court would redress those injuries. Plaintiffs face

imminent and irreparable harm due to uncertainty as to whether Defendants will issue refunds of the IEEPA duties as to the liquidated entries.

16.     A plaintiff must commence an action under 28 U.S.C. § 2636(i) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i). On February 1, 2025, the President issued Executive Orders that resulted in the collection of IEEPA Duties. These Orders were published in the Federal Register shortly thereafter. The instant action is filed within two years of the date that these Orders were issued and published, and also within two years in which Plaintiffs first paid these IEEPA Duties.

## GENERAL PLEADINGS

### I.   The IEEPA Tariff Orders

17.     On February 1, 2025, the President issued three executive orders imposing tariffs on imports from Canada, Mexico, and China. Each executive order relied on IEEPA authorizing the tariffs. Collectively, these are referred to in this Complaint as the "Trafficking Tariff Orders." The President claimed the tariffs were justified under IEEPA because of a purported national emergency.

18.     The executive order directed at Mexico, Executive Order 14194, 90 Fed. Reg. 9117, *Imposing Duties To Address the Situation at Our Southern Border* ("Mexico Trafficking Tariff Order"), imposed an additional 25 percent tariff on the import of goods from Mexico. *See* Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9117 (Feb. 7, 2025). The President's claim of emergency powers was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of Mexico to arrest, seize, detain, or otherwise intercept [drug trafficking organizations], other drug and human traffickers, criminals at large, and illicit drugs." *Id.*

19.     The executive order directed at Canada, Executive Order 14193, 90 Fed. Reg. 9113,

*Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border* ("Canada Trafficking Tariff Order"), declared an emergency because of opioid trafficking, and also imposed a 25% tariff, with certain exceptions. *See* Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9113 (Feb. 7, 2025).

20. The executive order directed at China, Executive Order 14195, 90 Fed. Reg. 9121, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China* ("China Trafficking Tariff Order"), also declared an emergency because of opioid trafficking, declaring that the "the sustained influx of synthetic opioids" was a national emergency and that "[m]any PRC-based chemical companies also go to great lengths to evade law enforcement and hide illicit substances in the flow of legitimate commerce." *See* Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9121 (Feb. 7, 2025). The President's claim of emergency powers was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of the [People's Republic of China] government to arrest, seize, detain, or otherwise intercept chemical precursor suppliers, money launderers, other [transnational criminal organizations], criminals at large, and drugs." *Id.*

21. Beginning February 4, 2025, the China Tariff Order imposed an additional 10% ad valorem duty on imports from China into the United States, in addition to existing duties.

22. On February 5, 2025, the President issued Executive Order 14200. *See* Exec. Order No. 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025).

23. On March 3, 2025, the President amended the China Trafficking Tariff Order again through Executive Order 14228. *See* Exec. Order No. 14228, *Further Amendment to Duties*

*Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11463 (Mar. 7, 2025). The March 3 Amendment raised the IEEPA tariffs on imports from China to 20%, effective March 4, 2025, citing China's failure to take sufficient measures to address the illicit drug crisis as justification for the hike.

24. On April 2, 2025, President Trump declared trade deficits with U.S. trading partners as its own national emergency and issued Executive Order 14257, known as the "Reciprocal Tariff Order." *See* Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15041 (Apr. 7, 2025). The Reciprocal Tariff Order imposed a 10% baseline tariff on nearly all imports to the United States, effective April 5, and additional country-specific reciprocal tariffs on 57 countries, effective April 9. *Id.* at Annex I. These higher country-specific tariffs range from 11% to 50%. *Id.* The

25. On April 8, 2025, in response to China's retaliatory tariffs, the President ordered a steep increase in the reciprocal tariff on Chinese goods, raising the rate from 34% to 84%, effective April 9, 2025. *See* Exec. Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15509 (Apr. 14, 2025).

26. On April 9, 2025, the President announced a 90-day suspension of elevated country-specific tariffs for all nations except China, effective April 10, 2025. *See* Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment,* 90 Fed. Reg. 15625 (Apr. 15, 2025). At the same time, the country-specific tariff rate on Chinese imports was raised from 84% to 125%, effective April 10, 2025. *Id.* Meanwhile, the 20% trafficking tariff on imports from China remained in place, such that most imports from China faced a minimum 145%

IEEPA tariff.[1]

27. In implementing the IEEPA tariffs, the Defendant instructed modifications to the Harmonized Tariff Schedule of the United States, mandating that goods subject to the disputed tariffs be classified under new tariff codes.

28. On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *See V.O.S. Selections, et al. v. Donald J. Trump, et al.*, No. 25-cv-00066 (Dkt No. 2). As discussed below, this Court held the orders were unlawful and the Federal Circuit, sitting *en banc*, affirmed.

29. Since the *V.O.S. Selections* complaint was filed, the President has invoked IEEPA to issue additional executive orders imposing additional tariffs and modifying others. As explained below, the Federal Circuit has held that IEEPA does not authorize the President to impose tariffs. By this complaint, Plaintiffs challenge those IEEPA Tariff orders ("Challenged Tariff Orders") that affect duty rates on goods imported from the countries with which Plaintiffs do business and for which Plaintiffs pay duties (thus causing Plaintiffs injury), and which the Federal Circuit has already held to be unlawful.

---

[1] The country-specific tariff on Chinese imports is temporarily set at 10%, effective May 14, 2025. *See* Exec. Order No. 14298, *Modifying Reciprocal Tariff Rates To Reflect Discussions With the People's Republic of China*, 90 Fed. Reg. 21831 (May 21, 2025); Exec. Order No. 14334, *Further Modifying Reciprocal Tariff Rates To Reflect Ongoing Discussions With the People's Republic of China*, 90 Fed. Reg. 39305 (Aug. 14, 2025); Exec. Order No. 14358, *Modifying Reciprocal Tariff Rates Consistent With the Economic and Trade Arrangement Between the United States and the People's Republic of China*, 90 Fed. Reg. 50,729 (Nov. 7, 2025).

## II.    CBP's Implementation of the IEEPA Tariff Orders

30.    CBP is charged with the assessment and collection of duties. 19 U.S.C. §§ 1500, 1502.

31.    When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods, including those imposed under IEEPA, on the imported goods based upon the tariff classification of goods, according to the rates established by the Harmonized Tariff Schedule of the United States ("HTSUS"). *See* 19 U.S.C. §§ 1202, 1500, 1502.

32.    The importer of record typically pays an estimated duty at the time of entry, based on its customs declaration, which specifies the value, country of origin, and HTSUS classification of the merchandise. *See* 19 U.S.C. § 1484. CBP may review the customs declaration and inspect the imported goods. The final duty computation is then based on the verified value, classification, country of origin, applicable duty rate, and other information. *See* 19 U.S.C. § 1500.

33.    Once CBP determines the final duty amount, it "liquidates" the entry and notifies the importer of record as to whether the importer owes more money or is entitled to a refund. 19 U.S.C. § 1500.

34.    Unless an extension is granted, liquidation must occur within one year. *See* 19 U.S.C. § 1504(a). CBP typically aims to liquidate entries 314 days after the goods' entry date and posts a notice on its website. However, CBP may liquidate entries earlier or extend the liquidation period.

35.    This Court possesses the equitable authority to suspend liquidation. *E.g.*, *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1365-66 (Ct. Int'l Trade 2021).

36.    After liquidation occurs, and if the liquidation is subject to protest, the importer of

record has 180 days to file a protest requesting CBP to reliquidate the duties. *See* 19 U.S.C. § 1514(a).[2] However, not all liquidations can be protested. For example, if CBP acts purely in a ministerial capacity in imposing a duty, the liquidation of that entry is not subject to protest. *Id.*; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

37. Both this Court and the Federal Circuit have warned that an importer may be barred from recovering duty refunds on entries that have liquidated, even where the underlying legality of a tariff is later found to be unlawful. *See In re Section 301 Cases*, 524 F. Supp. 3d at 1365-66; *Target Corp. v. United States*, 134 F.4th 1307, 1316 (Fed. Cir. 2025).

### III. Three Courts Have Held That IEEPA Does Not Authorize Assessment of Duties

38. The Challenged Tariff Orders cite IEEPA, 50 U.S.C. § 1701 *et seq.*, the National Emergencies Act, 50 U.S.C. § 1601 *et seq.*, section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 for authority to impose tariffs.

39. None of these statutes authorize the President authority to impose tariffs. Of these, Defendants have relied solely on the IEEPA statute to impose and collect the IEEPA duties at issue.

40. On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections*, holding that IEEPA did not authorize assessment of IEEPA Duties. This Court permanently enjoined the government from enforcing the IEEPA Duties at issue in that case.

41. On appeal, the Federal Circuit stayed this Court's decision.

42. Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA Duties are unlawful.

43. In a separate lawsuit brought by another group of importers, the U.S. District Court

---

[2] CBP can also voluntarily reliquidate within 90 days of the liquidation. *See* 19 U.S.C. § 1501.

for the District of Columbia concluded that IEEPA provides no authority to impose tariffs. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). The case was appealed to the D.C. Circuit, but before that court heard arguments, the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*, consolidated them, and held oral argument on November 5, 2025.

### IV.   Plaintiffs Paid Preliminary IEEPA Duties

44.   Plaintiffs' imports subject to IEEPA Duties entered the United States under newly designated HTSUS codes.

45.   As of the date of this Complaint, Plaintiffs have paid IEEPA duties imposed by the IEEPA Tariff Orders.

## STATEMENT OF CLAIMS

### COUNT I
### THE CHALLENGED TARIFF ORDERS ARE *ULTRA VIRES* UNDER *V.O.S. SELECTIONS*

46.   Plaintiffs incorporate paragraphs 1-45 above by reference.

47.   In *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350, 1383 (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025), the Court of International Trade held that the President exceeded his authority under the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. § 1701 et seq., when imposing tariffs on imported goods.

48.   The *V.O.S. Selections* Court held that (1) IEEPA authorizes the President only to "investigate, regulate, or prohibit" certain foreign transactions during a national emergency; (2) IEEPA does not authorize the imposition of tariffs or duties on imports; and (3) neither the statute's text nor its legislative history contains any clear delegation to the President to set tariff rates.

49.   The Federal Circuit affirmed that interpretation, holding that Congress did not

clearly delegate to the President tariff-imposing authority under IEEPA and that construing the statute to permit such authority would raise serious constitutional issues under the major questions and non-delegation doctrines.

50. The Challenged Tariff Orders mirror those invalidated in *V.O.S. Selections* in structure, claimed authority, and effect. They seek to impose duties and amend the Harmonized Tariff Schedule solely under IEEPA. For the same reasons articulated in *V.O.S. Selections* and affirmed by the Federal Circuit, these Tariff Orders exceed the President's statutory authority and are therefore unlawful, void *ab initio*, and without effect as applied to Plaintiffs.

51. Plaintiffs respectfully request that this Court apply the binding decision of the Federal Circuit, declare the Challenged Tariff Orders unlawful as to Plaintiffs, enjoin Defendants from enforcing them against Plaintiffs, and order the refund of all IEEPA duties collected from Plaintiffs, with interest as provided by law.

## COUNT II
## ALTERNATIVE: THE CHALLENGED ORDERS ARE UNCONSTITUTIONAL

52. Plaintiffs incorporate paragraphs 1-51 above by reference.

53. In the alternative, if the Court interprets IEEPA as authorizing tariffs, the Challenged Tariff Orders must still be deemed unlawful because such a reading would result in an impermissible delegation of legislative power.

54. The United States Constitution vests in Congress exclusively the power to "lay and collect . . . Duties." U.S. CONST. art. I, § 8, cl. 1.

55. Under separation-of-powers principles and binding Supreme Court precedent, Congress may not delegate its legislative power to the President without providing, at minimum, an intelligible principle that guides and limits the President's power. IEEPA fails to supply such a

principle.

56. Plaintiffs respectfully request a declaration that the IEEPA Tariff Orders are unconstitutional under the reasoning of *Learning Resources* as to Plaintiffs, enjoining Defendants from enforcing those orders against Plaintiffs, and ordering refunds of all IEEPA duties collected from Plaintiffs, with interest as provided by law.

## COUNT III
## (DECLARATORY JUDGMENT, 28 U.S.C. § 2201)

57. Plaintiffs incorporate paragraphs 1-56 above by reference.

58. Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

59. Plaintiffs' claims present an actual controversy concerning the President's authority under IEEPA, the statute's constitutionality, and the authority of CBP to implement and collect the tariffs imposed pursuant to those orders.

60. Plaintiffs are importers of record and have suffered injury by having been required to pay IEEPA duties under the Challenged Tariff Orders on goods it imported into the United States.

61. This Court has the equitable authority to issue a declaratory judgment that the Challenged Tariff Orders are unlawful for any of the foregoing reasons and that CBP lacks power to implement and collect the resulting tariffs as applied to Plaintiffs.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request that this Court:

a) declare that the President lacks authority under IEEPA to impose tariffs;

b) declare that the Challenged Tariff Orders are *ultra vires* and void *ab initio* as applied to Plaintiffs;

c) declare that, CBP lacks authority, as to Plaintiffs, to implement or collect any tariffs listed in HTSUS that derive from the Challenged Tariff Orders;

d) with respect to Plaintiffs, enjoin Defendants from imposing and enforcing any tariffs set out in the HTSUS that are based on the Challenged Tariff Orders;

e) order the United States to refund to Plaintiffs all IEEPA duties collected on those entries, together with interest as provided by law; and

f) award Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action; and

g) grant any further relief this Court deems just and proper.

Respectfully submitted,

Dated: December 23, 2025

/s/ Andrew McAllister
Ashley Akers
Andrew McAllister
Xin Jin
Noah Curtin
HOLLAND & KNIGHT LLP
800 17th Street, NW, Suite 1100
Washington, DC 20006
Tel. (202) 469-5133
Andrew.Mcallister@hklaw.com

*Counsel for Plaintiffs*